## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **STEPHANIE TARAPCHAK, et al** | **:  CIVIL ACTION** |
| | **:** |
| **v.** | **:** |
| | **:  NO. 15-2078** |
| **LACKAWANNA COUNTY, et al** | **:** |
| | **:** |

**KEARNEY, J.**                                                      **March 24, 2016**

### MEMORANDUM

Arrested persons awaiting trial are entitled to due process whether they are detained in prison or released on bail.  If the state has probable cause to believe a person violated terms of house arrest on bail, it can investigate and recommend charges for bail violations.  We now face an apparent wrinkle where Lackawanna County allows its Director of House Arrest, accompanied by a corrections officer, to hold a prison hallway "hearing" to interrogate a person allegedly violating a house arrest condition without counsel. Following this hallway hearing, the Director then recommends a term of detention to a judicial officer pending trial.  Pennsylvania Law requires a judicial hearing within seventy-two (72) hours of a re-arrest for a bail violation. As such, you would think the statutory judicial hearing, at the latest, should be held within seventy-two (72) hours of the House Arrest Director's prison hearing.   When, as here, a person suspected of a bail violation is interrogated by the House Arrest Director and then served over 160 days in prison on the bail violation without a judicial hearing, something has gone wrong. Setting aside a wide variety of *pro se* prolix claims which lack merit against a vast conspiracy of judges, prosecutors, defense attorneys, the warden and his lawyer, we find Plaintiff stated one Fourteenth Amendment due process claim against the House Arrest Director and Lackawanna County warranting discovery and we now await to find out what went wrong.

## I.     Relevant facts alleged in the second amended complaint.

Plaintiff Stephanie Tarapchak is imprisoned at the Lackawanna County Prison arising from the Commonwealth of Pennsylvania's criminal charges stemming from the operation of her medical practice.[1]  On January 2, 2014, the Commonwealth arrested Tarapchak and held her at the Lackawanna County Prison on $100,000 bail.[2]

### *Conduct in the Court of Common Pleas and County Prison.*

On April 28, 2014, Defendant Lackawanna County Judge Geroulo reduced Tarapchak's bail to $25,000, of which she posted ten percent (10%).[3] Judge Geroulo ordered Tarapchak be placed in the Lackawanna County House Arrest Program while out on bail.[4] His Order warned "[v]iolations of House Arrest regulations will result in termination from the programs and further result in re-incarceration in the Lackawanna County Prison" and "if you fail to abide by all conditions set forth by the House Arrest Programs or fail to return to Official Detention, a Bench Warrant will be issued for your arrest and Escape Felony Charges will be filed."[5] The Order further provided it "will serve as a temporary Bench Warrant until Formal Charges for Escape are filed by the County District Attorney's Office."[6] Tarapchak remained in the House Arrest program from May 5, 2014 to October 22, 2014.

On October 23, 2014, Tarapchak appeared at the House Arrest facility to explain why her house arrest monitoring equipment indicated she violated the conditions of the house arrest program the previous evening.[7]  Defendant Director of House Arrest Patrick Lynn ("Director Lynn") remanded her to the Lackawanna County Prison.[8]

On October 24, 2014, Director Lynn, along with correctional officer Kelly, held a formal misconduct hearing, which Tarapchak alleges is a secret Lackawanna County procedure used to hold inmates without giving them a hearing on the bench warrant issued for their arrest.[9] Tarapchak did not wish to take part in the hearing without her lawyer.[10] Lynn then prepared a

2

report recommending Tarapchak violated the terms of her house arrest and she remain incarcerated pending further action.[11] On October 27, 2014, Lynn sent his recommendations to Judge Geroulo detailing Tarapchak's bail violation.[12]

On October 24, 2014, the Attorney General's office faxed a motion to revoke Tarapchak's bail to her criminal attorney Defendant Joseph Kalinowski, as well as Judge Geroulo.[13] The court filed this motion on Tarapchak's criminal docket, of which we may take judicial notice, on October 30, 2014.[14]

Judge Geroulo scheduled a November 7, 2014 hearing on the Attorney General's motion to revoke bail.[15] At the November 7, 2014 hearing, Tarapchak's Attorney Kalinowski said his client Tarapchak wanted to recuse Judge Geroulo.[16] Judge Geroulo asked Attorney Kalinowski to file the motion and he recessed the hearing to a later date.[17] Attorney Kalinowski did not file the motion but instead moved to withdraw as Tarapchak's defense counsel on January 16, 2015.[18]   We have no explanation as to why Attorney Kalinowski waited almost two months, while his client sat in jail, to file this motion.  In the interim, Tarapchak remained in prison on the bail violation with her only hearing held by Defendant Lynn and a corrections officer without counsel.

On January 23, 2015, Judge Geroulo granted Attorney Kalinowski's motion to withdraw and further recused himself because Tarapchak sued the Lackawanna County Prison and the Prison Board, on which Judge Geroulo sits.[19]  Tarapchak remained in prison.

On February 4, 2015, Defendant Judge Michael Barrasse replaced Judge Geroulo as presiding judge in Tarapchak's criminal case while she remained in prison on Defendant Lynn's recommendation.[20]

3

Six weeks later, Judge Barrasse appointed Attorney Bernard Brown as Tarapchak's new defense counsel.[21] Attorney Brown filed an omnibus pretrial motion, including a writ of *habeas corpus.* Judge Barrasse held a hearing on April 10, 2015 to discuss this omnibus pretrial motion.[22] Tarapchak alleges Attorney Brown failed to include the fact she had not received a bench warrant hearing within seventy-two (72) hours of her re-arrest as required by Pennsylvania Rule of Criminal Procedure 150(A)(5)(b), as a basis for her immediate release.[23]   She remained in jail on the bail violation without a hearing.

At the April 10, 2015 hearing, Judge Barrasse heard argument on the omnibus pretrial motion and also addressed whether Tarapchak received a hearing under Pennsylvania Rule 150(A)(5)(b).[24] Defendant Deputy Attorney General Joseph LaBar, the prosecuting attorney, admitted the court did not hold a hearing on Tarapchak's house arrest violations.[25] Judge Barrasse asked Attorney Brown if Tarapchak is denying the house arrest violations and Attorney Brown stated he "talked to [his] client" and they were not going to deny the house arrest allegations.[26] Judge Barrasse then told Tarapchak of her right to a hearing then and by admitting the violations she is waiving a right to the hearing.[27] Tarapchak responded she understood.[28] Judge Barrasse found her in violation of house arrest.[29] No party addressed Tarapchak's stay in prison based on Director Lynn's recommendation following a prison hallway hearing.

On July 6, 2015, Plaintiff Joseph Pilchesky, purportedly acting as Tarapchak's "next friend" filed a civil petition for *habeas corpus* relief in the Lackawanna County Court of Common Pleas.[30] Judge Barrasse heard argument on the civil petition on August 6, 2015.[31] Defendant Attorney Nicholas Kravitz defended Lackawanna County Prison Warden Robert McMillan, the named defendant in the civil *habeas* petition.[32] Judge Barrasse heard argument and denied the civil petition as "[a]ll those issues were addressed by this Court" in the April 10,

4

2015 rulings.[33] In addition, Judge Barrasse found Pilchesky's *habeas* petition to be a "dilatory tactic" aimed at delaying Tarapchak's criminal trial.[34]

On September 15, 2015, Pilchesky, again as Tarapchak's purported "next friend", moved to remove Attorney Brown as Tarapchak's appointed criminal counsel alleging "dishonest, unethical, and unprofessional conduct."[35] Judge Barrasse again held a hearing on the motion and ordered Pilchesky to submit a brief explaining how he had standing to act as Tarapchak's "next friend."[36] Later that same day, Pilchesky filed a "Motion to Disqualify" Judge Barrasse accusing him of conspiratorial acts.[37] On September 21, 2015, the eve of Tarapchak's criminal trial, Judge Barrasse denied the motion to remove Attorney Brown as defense counsel.[38] He further ruled Pilchesky did not have "next friend" standing in the state court, as we do today in the accompanying Order and Findings of Fact and Conclusions of Law.[39]

Tarapchak's criminal trial began a week later on September 22, 2015 with Defendant Judge John Braxton presiding over the trial.[40] On October 6, 2015, a jury found Tarapchak guilty of eight criminal charges.[41] Judge Braxton held Tarapchak in the Lackawanna County Prison based on the conviction while awaiting sentencing.   On March 10, 2016, Judge Braxton sentenced Tarapchak on each guilty count.[42] Tarapchak remains in Lackawanna County Prison.

### *Tarapchak seeks relief in this Court.*

Tarapchak originally filed a federal civil rights complaint on March 31, 2015.[43]  On June 24, 2015, Tarapchak voluntarily dismissed the complaint under Rule 41(a)(1)(A)(i).[44]  On October 21, 2015, Tarapchak filed an "amended complaint" accompanied by a "motion to correct the record."[45] This Court ordered the Clerk of Court to open a new civil action based on the amended complaint filed by Tarapchak.[46]

On October 27, 2015, the Clerk of this Court opened the new civil action and filed the original complaint.[47] The original complaint, filed by Tarapchak and Pilchesky, named ten of the now twelve Defendants, totaling nine (9) counts, 301 paragraphs, and approximately 372 pages of exhibits.[48] On November 4, 2015, Tarapchak and Pilchesky filed an amended complaint adding Attorney Kravitz as a defendant, an additional twenty-one counts, and 138 additional paragraphs.[49] After many Defendants moved to dismiss the amended complaint, Tarapchak and Pilchesky filed the operative Second Amended Complaint on January 13, 2016.[50] The Second Amended Complaint now totals twenty-five (25) counts, 136 pages, and 702 paragraphs.[51] All Defendants moved to dismiss the complaint on various grounds.

Expressing concern over non-lawyer Pilchesky's "next friend" status, we entered a show cause order requiring Pilchesky to "detail[] the legal basis for his ability to act as a representative for injuries . . . to Plaintiff Tarapchak [.]"[52] Pilchesky and some Defendants filed responses to the show cause order.[53] We timely held an evidentiary hearing on the show cause order and oral argument on the Defendants' motions to dismiss.[54] Today, we struck Pilchesky's purported standing as a "next friend" in the accompanying Order as further described in our Findings of Fact and Conclusions of Law.

## II.  Analysis[55]

Plaintiffs Tarapchak and Pilchesky (both as "next friend" and individually) bring this federal civil rights action under 42 U.S.C. §§ 1983, 1985, and 1986 alleging certain Defendants violated the Fourth, Fifth, and Fourteenth Amendments, while also conspiring with other Defendants to violate these rights.  Tarapchak's main claim is one or more Defendants illegally detained her without a statutorily required hearing within seventy-two (72) hours after violating one of the conditions of house arrest as a bail condition.  Tarapchak alleges she did not receive a

6

bench warrant hearing, at the very earliest, until April 10, 2015, approximately 160 days after her reincarceration. Due to failing to timely give her a hearing, she alleges she was entitled to immediate release. With her October 6, 2015 conviction and detainer, her argument is admittedly moot and she now seeks money damages for false arrest and imprisonment, as well as equal protection and due process violations.

Pilchesky, while not a party to twenty-three of the twenty-five counts in the Second Amended Complaint, alleges Judges Barrasse and Braxton violated his Fifth and Fourteenth Amendment due process rights. He complains Judges Barrasse failed to provide a hearing on Tarapchak's "Motion to Supplement" Attorney Brown as counsel. Pilchesky alleges Judge Braxton denied Tarapchak's "Motion to Continue Sentencing"—filed by Pilchesky—and this violated Tarapchak's and Pilchesky's due process rights. He also alleges a conspiracy between the two judges under § 1985 and § 1986.

Defendants argue Tarapchak and Pilchesky's excessively prolix complaint fails for myriad reasons. First, Defendants argue all the claims are barred by the favorable termination rule announced by the United States Supreme Court in *Heck v. Humphrey*, 512 U.S. 477 (1994). Defendants also contend we lack subject-matter jurisdiction over Tarapchak's claims under the *Rooker-Feldman* doctrine. Defendants argue the conspiracy claims are subject to dismissal for failing to allege the existence of a conspiracy with particularity. Various Defendants move to dismiss on immunity grounds: Judges Geroulo, Barrasse, and Braxton (the "Judicial Defendants"), Attorney General Kane and Deputy Attorney General LaBar, and House Arrest Director Lynn. Finally, Lackawanna County argues Tarapchak fails to plead a viable municipal liability claim, while Defendant Warden McMillan argues Tarapchak fails to plead his involvement in any of the conduct alleged.

7

### A. The Second Amended Complaint violates Rule 8(a)(2).

Federal Rule of Civil Procedure 8(a)(2) requires a "short and plain statement of the claim showing that the pleader is entitled to relief." The Second Amended Complaint is nowhere near a "short and plain statement". Our court of appeals has repeatedly affirmed district courts' dismissal of overly verbose, unintelligible complaints in violation of Rule 8.[56]   We are particularly mindful when dismissing a repetitive and sometimes incomprehensible *pro se* complaint for Rule 8 violations, we should offer leave to amend.

The Second Amended Complaint is unwieldy with 702 paragraphs spread out over 136 pages. It is largely repetitive and has only grown more so in its third iteration. But striking the Second Amended Complaint will only delay resolution as we recognize striking the complaint for a Rule 8 violation and then directing a *pro se* plaintiff to file again would only serve to "unnecessarily proliferate the pleading stage and postpone a trial on the merits [.]"[57]While Pilchesky's complaint is unnecessarily long, redundant, and littered with irrelevant facts, we will wade through the Second Amended Complaint to evaluate the sufficiency of the allegations.

### B. The Judicial Defendants are entitled to judicial immunity.[58]

Tarapchak alleges the Judicial Defendants Judges Geroulo, Barrasse, and Braxton engaged in a conspiracy with many of the other Defendants to keep her in pretrial detention in an attempt to impede her preparation for her criminal trial and to ensure a criminal conviction. Pilchesky also sues the Judges Barrasse and Braxton for decided legal issues as judges. The Judicial Defendants are immune and Tarapchak's and Pilchesky's claims against them are dismissed with prejudice.

Absolute judicial immunity shields the Judicial Defendants from suit for monetary damages arising from their judicial acts.[59]   To be entitled to judicial immunity, a judge must act in his judicial capacity over a matter for which he has jurisdiction.[60] "Immunity will not be

8

forfeited because a judge has committed 'grave procedural errors.'" [61]   Nor will a judge lose immunity because his actions are "unfair or controversial."[62]   We focus on the "general nature of the challenged action" without regard for the judge's "motive or the correctness of his or her decision."[63]

Tarapchak accuses the Judicial Defendants of silently conspiring with other actors in refusing to give her a bail hearing in October 2014 and for months thereafter.  Specifically, she argues Judge Geroulo knew at the November 7, 2014 hearing Tarapchak had not received her bench warrant hearing and remained silent.[64] After Judge Geroulo recused himself, Judge Barrasse conducted an April 10, 2015 hearing on the Commonwealth's motion for bail revocation.[65]  In the April 10, 2015 hearing, Judge Barrasse addressed the bail hearing issue and Deputy Attorney General LeBar candidly admitted Tarapchak had not yet had a hearing.[66] Then, Judge Barrasse asked Tarapchak if she had committed the bail violations and Attorney Brown allegedly told her to admit to the violations, and she did.[67]

Pilchesky then filed a civil *habeas* petition in state court, which was reassigned to Judge Barrasse as the presiding criminal judge.[68] Judge Barrasse held a hearing on August 5, 2015 at which he denied the *habeas* petition.[69] Tarapchak, three days before her criminal trial, moved to disqualify Judge Barrasse.[70] Judge Barrasse then apparently recused himself and Judge Braxton presided over Tarapchak's criminal trial.[71] Judge Braxton presided over the trial from September 22, 2015 to completion on October 5, 2015.[72] Tarapchak alleges Judge Braxton joined the conspiracy by failing to delay the trial and "stop the conspiracy from moving forward."[73]

Nothing gives us pause in granting immunity to the Judicial Defendants.  The Judge's acts at the hearings and Tarapchak's formulaic speculation of some mass conspiracy to conceal the lack of a hearing do not show the Judicial Defendants acted extra-judicially or without

9

jurisdiction. They may have erred, or a fact-finder could determine the lack of a hearing is entirely due to Tarapchak's and Pilchesky's delay-oriented motions to recuse judges and terminate attorneys, but those issues arise entirely from the commissioned judges acting in their judicial capacity. Many of these issues relating to the trial may need to be first addressed in the Pennsylvania appellate courts.

Tarapchak argues the Judicial Defendants are not entitled to immunity because she is suing them for a conspiracy under §§ 1985 & 1986, as opposed to §1983. She is wrong as immunity attaches when the judicial act is taken in furtherance of an alleged conspiracy.[74]

The claims against the Judicial Defendants Judges Geroulo, Barrasse, and Braxton are dismissed with prejudice.[75]

### C.    Tarapchak fails to allege facts of a conspiracy.

Tarapchak pleads fifteen (15) counts of conspiracy against Defendants under 42 U.S.C. §§ 1985, 1986. Section 1985(3) provides a cause of action against those who conspire "for the purpose of depriving, either directly or indirectly, any person or class of persons of the equal protection of the laws [.]" Section 1985(2) provides a cause of action against those who conspire "for the purpose of impeding, hindering, obstructing, or defeating, in any manner, the due course of justice in any State or Territory, with intent to deny to any citizen the equal protection of the laws [.]"[76]  To the extent she is suing Defendants under § 1985(2) or (3), her claims are dismissed because such claims require plaintiff allege "some racial, or perhaps otherwise class-based, invidiously discriminatory animus."[77]  Tarapchak has not made this required showing.[78]

Tarapchak's myriad conspiracy claims must also fail because she cannot plead facts plausibly evidencing a conspiracy. She must allege (1) a conspiracy; (2) motivated by racial or class-based discriminatory animus designed to deprive, directly or indirectly, any person or class of persons of the equal protection of the laws, (3) an act in furtherance of the conspiracy, and (4)

injury in person or property or deprived of any right or privilege of a citizen of the United States.[79] "To withstand a motion to dismiss, a complaint alleging a civil rights conspiracy should identify with particularity the conduct violating plaintiffs' rights, the time and place of these actions, and the people responsible therefor."[80]    Specific allegations of an agreement to carry out the alleged chain of events is essential in stating a claim for conspiracy.[81]  She must provide more than "mere incantation of the words 'conspiracy' or 'acted in concert'" to satisfy her Rule 8 pleading requirement.[82]

Here, Tarapchak's third attempt at pleading a conspiracy among all sides to a court proceeding provides nothing more than conclusory and speculative allegations.   While we recognize she cannot know the secretive agreements and winks and nods which often evidence some understanding, she fails to plead any form of an "actual agreement among the co-conspirators or 'meeting of the minds.'"[83]  We have no idea when or why any of these parties would agree to violate her civil rights.  Tarapchak's conspiracy theory essentially relies on her speculation as to the improper motives of each individual Defendant, including judges, prosecutors, defense attorneys, a warden and the warden's lawyer.   Tarapchak alleges each Defendant acted in such a way that the only explanation must be a conspiracy against her.  For example, her lawyer Attorney Brown's "outrageously deliberate ineffective counsel and failure to provide honest, ethical and professional representation, was all part and parcel of Atty. Brown's submission to the will of Judge Barrasse and Kathleen Kane to partake in a conspiracy [.]"[84] Later Tarapchak alleges she believes "Judge Braxton was fully informed by Judge Barrasse of the complicated conspiracy that had been in play over the previous six months involving Atty. Brown and Atty. LeBar [sic]" and "[i]t's unreasonable to consider that Judge Barrasse and Judge Brown did not have an informative discussion."[85]

But "[i]t is not enough that the end result of the parties' independent conduct caused plaintiff harm or even that the alleged perpetrators of the harm acted in conscious parallelism."[86] Tarapchak has not pled a conspiracy with the requisite "degree of particularity" required by Rule 8 in a civil rights conspiracy claim.[87]

A § 1986 claim is based on a knowing failure to prevent violations of § 1985. Such a cause of action is dependent on the existence of a § 1985 conspiracy.[88]   Because Tarapchak fails to plead a § 1985 claim, her § 1986 claims are dismissed.[89]  Counts I through XII, as well as XXII and XXV are dismissed.  As a result, we dismiss all claims against all Defendants other than Lackawanna County, Patrick Lynn and Robert McMillan.

### D. Tarapchak's remaining claims are properly brought as a civil rights action.

At its core, Tarapchak's claims challenge the over 160 days of pretrial detention based on a bail violation without the statutorily-mandated hearing before a judge. This issue requires we answer the unclear question of whether her complaint sounds in *habeas* or as a civil rights action. The answer is of "practical importance" as a § 1983 plaintiff need not exhaust a civil rights claim in a state forum because Tarapchak has not begun the exhaustion process in state court as yet.[90] In *Preiser v. Rodriguez*, state prisoners brought a civil rights action for injunctive relief alleging corrections officials acted unconstitutionally in depriving them of good-conduct-time credits.[91] The prisoners sought restoration of the credits, which would result in their immediate release from prison.[92]  The court decided whether state prisoners may obtain equitable relief under § 1983 despite § 2254 providing specific *habeas* relief.[93]

According to the Supreme Court, "the essence of habeas corpus is an attack by a person in custody upon the legality of that custody, and that the traditional function of the writ is to secure release from illegal custody."[94] Section 1983 on the other hand provides relief for persons

12

subject to constitutional deprivations at the hands of state actors. Thus, it is entirely possible a cause of action falls within both categories. Where a state prisoner is challenging the "fact or duration of his confinement," the case is more properly brought as a *habeas* petition even though a state actor may have acted unconstitutionally.[95] Consequently, the Court held "when a state prisoner is challenging the very fact or duration of his physical imprisonment, and the relief he seeks is a determination that he is entitled to immediate release or a speedier release from that imprisonment, his sole federal remedy is a writ of *habeas corpus*."[96]

None of the parties discussed whether these claims are properly brought as a civil rights action, as opposed to a *habeas* petition. Tarapchak is seemingly challenging her the term of her pretrial detention or at least we can fairly read her *pro se* complaint as raising this challenge. Such a challenge would be properly brought in a *habeas* petition under 28 U.S.C. § 2241 after state exhaustion. Tarapchak previously improperly filed a § 2254 habeas petition complaining of the very same conduct complained of here, including her pretrial detention without a hearing in violation of Pa. Rule of Crim. P. 150.[97] The court abstained from deciding the petition and dismissed it under *Younger v. Harris*, 401 U.S. 37 (1971).

Following the state court's jury's conviction and Judge Braxton's sentence, "the issue as to the legality of h[er] continued pretrial detention has been mooted, and it therefore becomes unnecessary to resolve the constitutional issues presented" in a pretrial *habeas* petition.[98] Tarapchak could not now seek *habeas* relief for the pretrial detention under § 2241.[99] Some of Tarapchak's claims, including those barred by *Heck*, any "fair trial" claims, and ineffective assistance of counsel claims are properly brought in a petition for post-conviction relief, and subsequent federal *habeas* petitions following exhaustion of her state appellate remedies.

Her due process claims relating to Defendant Lynn's October 24, 2014 recommendation and eventual months in prison without a hearing are properly before the Court.   The question is whether Tarapchak has sued the correct party in this Court.

### E.  Section 1983 direct liability claims against the County, Lynn and McMillan.

Tarapchak brings direct claims under § 1983 against Lackawanna County, Patrick Lynn, and Prison Warden Robert McMillan.   Section 1983 does not provide substantive rights, but rather a remedy for violation of a person's constitutional rights.[100]   Section 1983 provides a remedy when a person acting under color of state law deprived the plaintiff of right secured by the United States Constitution or federal statute.[101]   Tarapchak alleges violations of the Fourteenth Amendment Due Process Clause and Equal Protection Clause, Fourth Amendment violations, and Fifth Amendment Due Process Clause violations.

### 1.  *Heck v. Humphrey* bars Tarapchak's claims challenging the validity of her conviction.

Defendants move to dismiss Tarapchak's civil rights claims as barred by favorable termination rule in *Heck v. Humphrey*.[102]   *Heck* lies at "the intersection of the two most fertile sources of federal-court prisoner litigation—the Civil Rights Act of 1871 . . . 42 U.S.C. 1983 and the federal habeas corpus statute, 28 U.S.C. § 2254."[103]   In *Heck,* plaintiff sought damages alleging defendants engaged in an "unlawful, unreasonable, and arbitrary investigation leading to the petitioner's arrest", destroyed exculpatory evidence and caused certain unlawful evidence to be introduced at his trial.[104] The plaintiff did not seek injunctive relief or release from custody.[105] After examining the overlap between § 1983 claims and *habeas corpus* claims, the court held a plaintiff cannot attack the validity of his conviction or sentence in a § 1983 damages action without proving the conviction or sentence has been "reversed on direct appeal, expunged by

executive order, declared invalid by a state tribunal authorized to make such a determination, or called into question by a federal court's issuance of a writ of habeas corpus."[106]

Following *Heck,* we must consider whether Tarapchak's success on her § 1983 claims would necessarily imply the invalidity of her conviction or sentence.[107] If so, we must dismiss her Second Amended Complaint as she cannot show the Pennsylvania appeal courts have invalidated her October 2015 conviction or March 2016 sentence.[108]

Defendants argue Tarapchak is attempting to undermine the validity of her October 2015 state court conviction through this suit. We find support for this argument in the Second Amended Complaint. For example, Tarapchak consistently refers to a "rigged trial" or Defendants' persistence in "ensur[ing] a conviction."[109] Pilchesky testified during our March 1, 2016 hearing he desired to have the conviction overturned.[110]

"A criminal defendant tried by a partial judge is entitled to have his conviction set aside, no matter how strong the evidence against him."[111] Because at least part of Tarapchak's claims include an unconstitutional conspiracy to "rig her trial" and "ensure her conviction", success on these claims would necessarily imply the invalidity of her conviction.[112] Any claim by Tarapchak accusing her Attorneys Kalinowski and Brown of ineffective-assistance-of-counsel are barred by *Heck*.[113] Further, to the extent Tarapchak is attempting to recover on the theory her alleged unlawful incarceration hindered her ability to prepare for trial, this claim is barred by *Heck* as well.[114]    Tarapchak cannot recover for claims seeking to impugn her conviction.

## 2. The *Rooker-Feldman* doctrine does not bar Tarapchak's civil rights claims for the pretrial detention without a hearing.

The *Rooker-Feldman* doctrine derives from two United States Supreme Court cases: *Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923), and *District of Columbia Court of Appeals v. Feldman*, 460 .S. 462 (1983). The doctrine precludes this Court from exercising subject matter

jurisdiction over a suit which is essentially an appeal of a state court decision.[115]   This "narrow doctrine" only applies in "limited circumstances" where "state-court losers complain[] of injuries caused by state-court judgments rendered before the district court proceedings commenced and invit[e] district court review and rejection of those judgments."[116]   The doctrine "is not triggered simply by the entry of judgment in the state court."[117]   Rather, there are four requirements which must be met for *Rooker-Feldman*: 1) the federal plaintiff lost in state court; 2) the federal plaintiff complains of injuries caused by the state-court judgments; 3) the state court judgments were rendered before she filed the federal suit; and 4) the plaintiff is inviting the district court to review and reject the state judgments.[118]   The first and third requirements are procedural while the second and fourth requirements "are the key to determining whether a federal suit presents an independent, non-barred claim."[119]

In *Great Western*, our court of appeals did not apply *Rooker-Feldman* in a case involving complaints of a conspiracy between the federal defendants and state judges to provide the defendants with favorable rulings in a prior state court action.[120]   The procedural prongs having been satisfied, the court of appeals noted the second requirement may be "thought of as an inquiry into the source of the plaintiff's injury."[121]   "When the source of the injury is the defendant's actions (and not the state court judgments), the federal suit is independent, even if it asks the federal court to deny a legal conclusion reached by the state court[.]"[122]   In these situations, *Rooker-Feldman* is not a bar to federal jurisdiction.[123]   Despite the appearance of a straightforward test, the "application becomes more complicated when a federal plaintiff complains of an injury that is in some fashion related to a state court proceeding."[124]   Applying these principles, the court found the plaintiff's injuries resulted from the defendants' independent

violation of rights which caused the state court judgment.[125]  In other words, timing is important. Where the injury occurred prior to the state court judgment, *Rooker-Feldman* will not apply.

Today, we review a factually similar scenario to *Great Western*.  Defendants argue Tarapchak's claims are based on their participation in the conspiracy to deprive Tarapchak of due process, liberty, and fair trial rights by keeping her incarcerated and unable to prepare her defense even in the face of a rigged trial.  The Defendants argue Tarapchak's conviction is the state-court judgment of which she is seeking this Court's review.[126]  But this factual scenario is covered by *Heck*.

We find Tarapchak's complaint is more similar to *Great Western*.  Tarapchak is complaining of the alleged conspiratorial acts which led to a judgment being entered against her, but her injuries stem from the conspiracy rather than the judgment itself.  Thus, *Rooker-Feldman* cannot divest this Court of subject-matter jurisdiction or else "'there would be no federal remedy for a violation of federal rights whenever the violator so far succeeded in corrupting the state judicial process as to obtain a favorable judgment.'"[127]

### 3.  Tarapchak cannot state a Fifth Amendment claim.

Tarapchak brings claims for Fifth Amendment violations against Director Lynn and Warden McMillan.  Both of these Defendants are state actors and the Fifth Amendment does not restrict their actions as it only limits federal government action.[128]  We dismiss Tarapchak's Fifth Amendment claims against Director Lynn and Warden McMillan with prejudice.

### 4.  Tarapchak cannot state an Equal Protection claim.

Tarapchak alleges a Fourteenth Amendment Equal Protection Clause violation by Warden McMillan and Lackawanna County.  The Equal Protection Clause of the Fourteenth Amendment provides no state shall "deny to any person within its jurisdiction the equal protection of the laws."[129]  This requires state actors to treat all "similarly situated" persons

17

alike.[130]  To bring a successful equal protection claim Tarapchak must allege facts demonstrating "the existence of purposeful discrimination."[131]    Further, she must demonstrate she "received different treatment from that received by other individuals similarly situated."[132]    "A plaintiff's failure to allege any facts showing that he was treated differently than any similarly situated individuals is fatal to his equal protection claim."[133]

If Tarapchak is attempting to plead a "class-of-one" claim, then she must show 1) the defendant treated her differently from others similarly situated, 2) the defendant did so intentionally, and 3) there was no rational basis for the difference in treatment.[134]

Tarapchak failed to plead any facts of purposeful discrimination against her.  She has not alleged a Defendant treated her differently than any similarly situated individual.  To the contrary, she alleges this conduct is part of a failure to train affecting more than just her.  She cannot state an equal protection claim and we dismiss Count XIV with prejudice.

### 5.  Tarapchak's conditions of prison confinement claim fail under both the Eighth and Fourteenth Amendments.

Tarapchak sues Warden McMillan and Lackawanna County for cruel and unusual punishment under the Eighth Amendment for her incarceration from January 2, 2014 to May 2, 2014 and from October 23, 2014 through October 5, 2015.[135] At this time, Tarapchak was still a pretrial detainee.  The Eighth Amendment does not apply to pretrial detainees.[136]

The Fourteenth Amendment applies to pretrial detainees.  We must consider whether the conditions "amount to punishment prior to an adjudication of guilt in accordance with law."[137] We "decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose."[138]   "Unconstitutional punishment typically includes both objective and subjective components."[139]   The objective component asks whether "the deprivation [was] sufficiently serious" where the subjective component asks

whether "the officials act[ed] with a sufficiently culpable state of mind[.]"[140]   Determining whether the conditions of confinement constitute "punishment" requires we examine "the totality of the circumstances."[141]

Tarapchak alleges thirty-six (36) separate conditions allegedly violating her constitutional rights.[142]  These alleged harms include: "[i]mproper and insufficient medical treatment", "inadequate or insufficient recreation", "[r]epeated unjust lock downs", "insufficient table games", and "cold and distasteful food."[143]

Warden McMillan argues these claims fail because Tarapchak failed to: 1) plead his personal involvement, direction, or acquiescence in any of the alleged conduct; and 2) exhaust her administrative remedies under the Prison Litigation Reform Act, 42 U.S.C. § 1997e ("PLRA").[144]  We agree Tarapchak failed to allege any personal involvement by Warden McMillan in the alleged due process violations.[145]  Nor has Tarapchak alleged facts evidencing Warden McMillan's direction of others to violate her constitutional rights or acquiescence in any such conduct.[146]

Section 1983 liability cannot be based on a theory of *respondeat superior*.[147] Accordingly, Warden McMillan cannot be held liable for the conditions of confinement imposed by other officers.[148]

Similarly, we dismiss Lackawanna County in the conditions of confinement claim. Tarapchak does not, and cannot, plead a *respondeat superior* theory of municipal liability.[149] Her only allegations on this claim focus on a policy or custom.

A municipality may only be held liable where the injury inflicted is "permitted under its adopted policy or custom."[150]  "Policy is made when a decisionmaker possessing final authority to establish municipal policy with respect to the action issues an official proclamation, policy, or

edict. A course of conduct considered to be a custom when, though not authorized by law, such practices of state officials are so permanent and well-settled as to virtually constitute law."[151]

A plaintiff must establish a policy or custom which was the "moving force" behind the constitutional violation.[152]   Tarapchak must plead: 1) Lackawanna County had a policy or custom depriving her of constitutional rights; 2) Lackawanna County acted deliberately and was the moving force behind the deprivation; 3) the County's identified policy or custom caused her injuries. [153] For her municipal liability claims to survive, Tarapchak must allege the existence of a policy or custom. "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."[154]   "A custom exists where there is a 'course of conduct, although not specifically endorsed or authorized by law' that has become 'so well-settled and permanent as virtually to constitute law.'"[155]

Tarapchak's Second Amended Complaint is devoid of facts concerning a policy or custom implemented by Lackawanna County which served as the moving force behind her alleged constitutionally deficient prison conditions.   We dismiss Lackawanna County from Count XXI with prejudice.

### 6. Tarapchak fails to state a Fifth or Sixth Amendment claim for violations of her right to counsel or failure to provide *Miranda*[156] warnings.

In passing, Tarapchak alleges a Sixth Amendment violation of her right to counsel during her October 23-24, 2014 interaction with Director Lynn at the prison.[157]   Tarapchak further alleges Director Lynn interrogated her in custody without providing the *Miranda* warnings.[158]

Under the Sixth Amendment, "[i]n all prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defence."[159]   The right does not attach, however, until criminal proceedings have been initiated against the defendant.[160]   Criminal proceedings include

the "formal charge, preliminary hearing, indictment, information, or arraignment."[161]   The Sixth

Amendment right to counsel is "offense specific" with no exception for "factually related" or

"inextricably intertwined" crimes.[162]

While the Fifth Amendment, applicable to the states through the Fourteenth Amendment,

does not contain an explicit right to counsel similar to the Sixth Amendment, it does provide no

person "shall be compelled in any criminal case to be a witness against himself [.]"[163]   To

protect this right of the utmost sanctity, the Supreme Court has imposed "procedural safeguards",

including *Miranda* warnings and the "right to counsel" during custodial interrogation.[164]   Yet,

these procedural safeguards are not substantive rights as the right protected is the right to be free

from self-incrimination.[165]   Accordingly, "violations of the prophylactic *Miranda* procedures do

not amount to violations of the Constitution itself."[166]   Rather, it is the "use of coerced statements

during a criminal trial . . . that violates the Constitution.[167]

We find any fleeting claim of a Fifth or Sixth Amendment violation to be flawed.   First,

we are not convinced the Sixth Amendment right to counsel attached to Tarapchak's interaction

with Director Lynn at the prison.   Director Lynn's alleged interrogation had nothing to do with

the charges leading to her October 2015 conviction and March 2016 sentencing.   Tarapchak does

not allege facts evidencing Director Lynn asked questions whose answers could have been used

at trial for the underlying criminal charges.   Director Lynn allegedly questioned Tarapchak

regarding her alleged bail violation, which while arguably related to her pending criminal

charges, was conduct for which she could face separate criminal charges.   Accordingly, because

the "offense specific" nature of the Sixth Amendment right, it cannot be "invoked once for all

future prosecutions" and did not attach to the prison hallway hearing.

Tarapchak's allegations are more similar to a fact scenario where the Fifth Amendment is implicated. Our resolution of the issue is simpler than the Sixth Amendment issue. Tarapchak alleges Director Lynn interrogated her while she was in custody, and after she requested counsel. But there are no allegations she ever made a statement introduced at her criminal trial or her April 10, 2015 hearing which could have violated her right to be free from self-incrimination. In other words, even assuming technical violations of the procedural safeguards ensured by *Miranda*, no one used "coerced statements during [her] criminal trial" and thus, there could be no Fifth Amendment violation.[168]

Again, Tarapchak includes no specific count claiming such a violation but to the extent she is seeking to recover for violations of her Fifth or Sixth Amendment right to counsel, such claims are dismissed.

### 7. Tarapchak fails to state a Fourteenth Amendment claim for pretrial detention against Warden McMillan but pleads enough facts to state this claim against Director Lynn and the County.

Tarapchak alleges Lackawanna County, Warden McMillan and Director Lynn violated her due process rights by detaining her for an alleged bail violation without providing her a timely bench warrant hearing under Pennsylvania Rule of Criminal Procedure 150(A)(5)(b). The Fourteenth Amendment forbids state actors from depriving persons of life, liberty, or property without due process of law.[169]   Lackawanna County, Warden McMillan and Director Lynn principally raise fact based arguments including any delay in her hearing is due to her litigation tactics of recusing judges and seeking to replace counsel. These Defendants also cite Tarapchak's admissions she waived a hearing on April 10, 2015 long after she should have received a statutorily-required hearing.

We initially determine whether Tarapchak's "asserted individual interest . . . [is] encompassed within the Fourteenth Amendment's protection of like, liberty, or property."[170]

22

While bail is a conditional liberty, Tarapchak's interest in remaining free on bail "is within the contemplation of the liberty or property language of the Fourteenth Amendment."[171]   Revoking Tarapchak's liberty interest then must be accompanied by due process, in this instance a bench warrant hearing or bail revocation hearing.   Tarapchak alleges, and Defendant LeBar agreed in the April 10, 2015 hearing, the County incarcerated her without such a hearing until April 10, 2015.   The question is whether Tarapchak states a claim for depriving her liberty right against Warden McMillan, the County or Director Lynn.

### *Warden McMillan lacks personal involvement.*

As above, Tarapchak fails to allege facts of Warden McMillan's personal involvement, direction of Lynn's action, or acquiescence in conduct amounting to a due process violation.  We have no idea of Warden McMillan's role in the delayed scheduling of the statutory hearing.  Tarapchak does not allege Warden McMillan purposefully delayed her hearing, especially after she requested new judges and lawyers which led, in part, to several delays.  Absent any pleading of Warden McMillan's personal involvement, we dismiss him from this due process claims.  He also cannot be liable for *respondeat superior* liability for this civil rights claim.

### *Director Lynn may be liable for his participation in the due process detention claim.*

Director Lynn argues he is entitled to absolute immunity for his "adjudicatory determinations" which include removing Tarapchak from the house arrest program and convening a misconduct hearing at the prison.[172]   Lynn cites two cases where our court of appeals discussed absolute immunity for probation and parole officers when engaged in adjudicatory duties.  In *Wilson v. Rackmill*, the court of appeals reversed the district court's grant of absolute immunity and dismissal of the complaint after finding the parole hearing examiners were performing "executive and investigative functions, in addition to their adjudicatory

duties."[173]  In *Keller v. Pennsylvania Board of Probation & Parole*, the court of appeals affirmed the district court's grant of absolute immunity to a parole board member who took part in deciding whether plaintiff should have received parole.[174]  The court granted absolute immunity in *Keller* at summary judgment with the benefit of a more fulsome record.[175]

Officers are entitled to quasi-judicial immunity when "engaged in adjudicatory duties."[176] "When the function is purely mandatory, in accordance with the direct and positive legal authority applicable to the individual's position, and without any discretion involved in its performance, the policy basis for immunity—the need to permit the government to govern without fear of liability for errors which may occur in the making of necessary decisions [ ]—is no longer present."[177]

The issue is whether Director Lynn's actions fall within "adjudicatory duties" or if his recommendations during and after the hallway hearing were "purely mandatory . . . without any discretion involved."[178] Reading the Second Amended Complaint in the light most favorable to her, Officer Lynn's interactions with Tarapchak involved interrogation and adjudging her guilty of a bail violation leading him to recommend his finding to a judge under Pennsylvania Law. There is also a basis to presently find Director Lynn lacked any discretion under the House Arrest Rules.   He allegedly held a hearing in a prison hallway.  We cannot presently determine whether his role is adjudicatory or ministerial.  Tarapchak pleads enough facts to show Director Lynn is possibly engaging in both executive and adjudicative functions and, as in *Wilson*, we need more than allegations in a Second Amended Complaint to determine his precise role.  At the motion to dismiss stage, we are reluctant to definitively determine whether Director Lynn's conduct was adjudicatory in nature as opposed to executive or investigative.

Because we cannot dismiss him on immunity question, we must determine whether he acted to deprive Tarapchak of her constitutional right to liberty without due process of law. Given the facts alleged in the Second Amended Complaint, we find Tarapchak states a Fourteenth Amendment due process claim against Director Lynn based solely on the pretrial detention without a hearing. Tarapchak alleges Director Lynn is the individual who remanded Tarapchak to Lackawanna County Prison. He began the process and, as the Director, is personally involved in the hallway hearing and written recommendation to a judge. There is at least one question requiring discovery on Director Lynn's actions after his hallway hearing while Tarapchak sat in prison awaiting her statutorily mandated hearing. We are not presently aware of whether Director Lynn's role stops at the recommendation and he can then walk away without ensuring a judicial hearing on his recommendation. Tarapchak pleads Director Lynn's direct involvement in the decision to keep Tarapchak in the prison until she received a hearing. He made this decision either exercising discretion or as a ministerial mandate. At this stage, Director Lynn's direct involvement makes him a proper party for this claim.[179]

### *Monell liability on the due process claim for the County.*

Lackawanna County argues Tarapchak fails to plead its *Monell* liability for the due process claim arising from the delayed statutory hearing because: 1) there is no separate *Monell* count; and 2) Tarapchak fails to allege facts to support a failure to train theory.[180]

The first reason is unpersuasive as we construe Tarapchak's *pro se* complaint liberally and she pleads the County's involvement throughout the Second Amended Complaint.[181]

Tarapchak could plead *Monell* liability under either a "custom or practice" or "failure to train" theory.[182] While not discussed by Lackawanna County, we interpret Tarapchak's Second Amended Complaint as attempting to allege a "policy or custom" as the "moving force" behind

her alleged constitutional violation.  To succeed on a policy or custom claim, Tarapchak must plead: 1) the municipality had a policy or custom depriving her of constitutional rights; 2) the County acted deliberately and was the moving force behind the deprivation; and 3) the identified policy or custom caused her injuries.[183]

"To satisfy the first element of a *Monell* claim, 'plaintiff must show that an official who has the power to make policy is responsible for either the affirmative proclamation of a policy or acquiescence in a well-settled custom.'"[184]  Tarapchak has not alleged an official with this power to make the policy.  She has not alleged Warden McMillan is a policymaker for Lackawanna County and even if she had, she would be incorrect.  In Pennsylvania, the prison board is the authorized policymaker for county prisons, tasked with making policy decision regarding the "safekeeping, discipline, and employment of inmates."[185]   Because Tarapchak has not alleged the participation of a County policymaker and cannot base her claim against the County on Warden McMillan's conduct, Tarapchak cannot state a *Monell* claim based on a County policy or custom.[186]

The issue is then whether Tarapchak pleads a "failure to train" claim.  She may plead a "failure to" claim where the County's failure "amounts to deliberate indifference to the rights of persons with whom the police come into contact."[187]  The County's "culpability for a deprivation of rights is at its most tenuous where a claim turns on a failure to train."[188]   Deliberate indifference "is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action."[189]  "A pattern of similar constitutional violations by untrained employees is 'ordinarily necessary' to demonstrate deliberate indifference for purposes of failure to train." [190]

Tarapchak has not plead a "pattern of violations" ordinarily necessary for a "failure to train" claim.  But a "failure to train" claim can be premised on a single incident rather than a pattern of violations.[191]  When a claim is based on a single incident, liability will attach where the violation of federal rights is a "highly predictable consequence" of an inadequate municipal policy or custom in a situation likely to recur.[192]  Where the "need for more or different training is so obvious, and the inadequacy is so likely to result in the violation of constitutional rights" the municipality's inaction can amount to deliberate indifference.[193]  In *Berg v. County of Allegheny*, our court of appeals reversed the district court's grant of summary judgment on *Monell* liability.[194]  There the county designed a warrant-issuing procedure without implementing "protective measures" and "fail safes" to preclude erroneous warrants from being issued.[195] The court determined whether this design "where the slip of a finger could result in wrongful arrest and imprisonment" could amount to deliberate indifference to constitutional rights a question of fact necessary for the jury to decide.[196]

We find, based solely on the required deference to the allegations in the Second Amended Complaint, Tarapchak sufficiently pled facts demonstrating absence of any "protective measures" or "fail safes" to prevent persons like Tarapchak from being incarcerated for prolonged period of time without the statutorily mandated hearing before a judicial officer.  Such a situation hews towards the fact scenario in *Berg*.  Without proper measures to ensure those brought in on a bench warrant receive a timely statutory hearing before a judicial officer, it could be a "highly predictable consequence" they will be deprived of their due process rights in violation of the United States Constitution and sit in jail awaiting such a hearing.  We can fairly expect Director Lynn to deal with those individuals who allegedly violate a bail house arrest

condition and are remanded to custody have occurred and will continue in his course of duties. Without proper training, these persons may suffer constitutional violations.

We recognize Tarapchak also pleads delays caused by her litigation tactics but, based on our deference to the Second Amended Complaint, she has pled a plausible *Monell* claim against Lackawanna County for failing to train on the need for the timely statutorily-mandated hearing on the house arrest/bail condition violation before a judicial officer, not Director Lynn and a corrections officer.

### 8.   Tarapchak's Fourth Amendment claims of false arrest fails.

Tarapchak also sues Director Lynn, Warden McMillan, and Lackawanna County for Fourth Amendment false arrest/false imprisonment claims against

"'False arrest and false imprisonment are essentially the same claim . . . .'"[197]   The Fourth Amendment provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants, shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[198]

The Fourth Amendment prohibits officers from arresting a citizen without probable cause or without privilege to do so.[199]   "Probable cause exists when the information within the arresting officer's knowledge at the time of the arrest is sufficient to warrant a reasonable law enforcement officer to believe that an offense has been or is being committed by the person to be arrested."[200]

We dismiss Warden McMillan from this claim.   After three attempts, Tarapchak has not alleged Warden McMillan's personal involvement, direction of conduct, or acquiescence in such conduct.

Tarapchak alleges "Patrick Lynn was not a law enforcement officer and did not have

28

legal authority to arrest Dr. Tarapchak on the morning of October 23, 2014."[201] As she also alleges, at the time the County released Tarapchak on bail, Judge Geroulo entered an order warning, "if you fail to abide by all conditions set forth by the House Arrest Programs or fail to return to Official Detention, a Bench Warrant will be issued for your arrest and Escape Felony Charges will be filed." [202] The order further stated, "This Order will serve as a temporary Bench Warrant until Formal Charges for Escape are filed by the County District Attorney's Office." [203] Tarapchak does not challenge the validity of this Order.

It is established in this Circuit "action taken pursuant to a facially valid court order receives absolute immunity from § 1983 lawsuits for damages."[204]   We find nothing which indicates the temporary bench warrant is invalid on its face.  Because Director Lynn arrested and imprisoned Tarapchak under the facially valid bench warrant, he cannot be held liable for false arrest or imprisonment under the Fourth Amendment.[205]

As there is no constitutional false arrest/false imprisonment claim, we also dismiss the County from any possible *Monell* liability on this claim. These claims are dismissed with prejudice.[206]

### F.  Pilchesky's claims fail

Pilchesky alleges Judges Barrasse and Braxton violated his rights to have a hearing on his unauthorized "Motion to Supplement" Attorney Brown filed in Tarapchak's criminal matter. Pilchesky provided no citation to case law and we have found no such case delineating a third party's right to be heard on an improperly filed motion to supplement counsel.

As we discussed above, Judges Barrasse and Braxton are immune from this suit.

Pilchesky's claims also fail to state a constitutional claim even if the Judges are subject to suit.  Pilchesky alleges Judge Braxton violated his rights by denying his improperly filed motion

to continue sentencing. Again we are aware of no right held by a third party to file motions on behalf of a criminal defendant. Judge Barrasse previously denied Pilchesky's "next friend" bid. Pilchesky had no authority to file motions.

Pilchesky's claim is dismissed as there is no constitutional violation. Because there is no underlying constitutional violation, Pilchesky's conspiracy claim is also dismissed.

### III.   Conclusion

We dismiss Tarapchak's unfounded conspiracy claims and most of her constitutional claims as failing to state a claim.     Given our deference to the allegations in her *pro se* Second Amended Complaint, and the plead facts raising issues regarding why she sat in jail for over 160 days awaiting the statutorily-mandated judicial hearing which the prosecutor admits never occurred, we deny Lackawanna County's and Director Lynn's motion to dismiss Tarapchak's Fourteenth Amendment due process claim against them at this stage.     We also dismiss Pilchesky's claims.

In the accompanying Order, we grant Tarapchak another chance to plead a short and plain statement of this remaining claim against Lackawanna County and Director Lynn under Fed.R.Civ.P. 8.   We then expect the parties' cooperative discovery, mindful of obligations under Fed.R.Civ.P. 1, will inform our further deliberations.

---

[1] The status of Tarapchak's medical license is not clear.  The Commonwealth licensed Tarapchak to practice as an osteopathic physician and surgeon.  *See Tarapchak v. Bureau of Prof'l & Occupational Affairs*, No. 1280 C.D. 2014, 2015 WL 5453173, * 1 (Pa. Commw. Ct. July, 9, 2015).  Tarapchak and the Commonwealth entered into a consent agreement which provided the State Board of Osteopathic Medicine the authority to suspend, revoke, or otherwise restrict her license.  *Id.*  The consent agreement provided for suspension of Tarapchak's license for "no less than three years but immediately stayed the suspension in favor of no less than three years of probation, subject to specifically enumerated terms and conditions."  *Id.*  When the Commonwealth filed a petition for appropriate relief alleging Tarapchak violated the terms and conditions of the consent agreement, Tarapchak sought to vacate the consent agreement.  *Id.*  The Board then lifted the stay on a suspension, terminated probation and indefinitely suspended her license for no less than three (3) years.  *Id.*  On January 4, 2013, the Board denied her petition to vacate the consent agreement and remanded the matter for hearing on the Commonwealth's petition for appropriate relief.  *Id.* at *2.

On January 17, 2014, a hearing examiner held a hearing on the Commonwealth's petition in Tarapchak's absence and concluded the Commonwealth met its burden.  The Board adopted the adjudication as final in June 2014.  *Id.*  The Commonwealth Court vacated this determination finding the hearing violated Tarapchak's due process rights.  The court determined an email from Pilchesky informing the prosecuting attorney Tarapchak had been arrested and would not be available for the hearing constituted a request for a continuance and the hearing examiner abused her discretion by not considering and thus, impliedly denying such a request.  The Commonwealth Court remanded the matter for further proceedings.  The status of those proceedings is uncertain.  The Second Amended Complaint alleges Tarapchak's license is still in effect but given the Board's lifting of the stayed suspension, it is far from clear.  The Pennsylvania Department of State website lists Stephanie Tarapchak's osteopathic license as "Suspended."  *See* Pennsylvania Department of State License Verification, http://www.licensepa.state.pa.us/Details.aspx?result=6e2ffb24-63f3-4b14-b036-3248ce08b809.

[2] (ECF Doc. No. 57, at ¶ 17).

[3] (*Id.* at ¶ 20.)

[4] (*Id.* at ¶ 21.)

[5] (*Id.,* Ex. A.)

[6] (*Id.*)

[7] (*Id.* at ¶ 25.)

[8] (*Id.* at ¶ 26.)

[9] (*Id.* at ¶ 27.)

[10] (*Id.*)

[11] (*Id.* at ¶ 28; Ex. B.)

[12] (¶ at ¶ 39; Ex. D.)

[13] (*Id.* at ¶ 37.)

[14] (ECF Doc. No. 95-1 (Criminal Docket of *Commonwealth v. Stephanie Tarapchak*, CP-35-CR-0000550-2014))

[15] (ECF Doc. No. 57, at ¶ 50.)

[16] (*Id.*)

[17] (*Id.*)

[18] (*Id.* at ¶ 51.)

[19] (*Id.* at ¶ 52.)

[20] (*Id.* at ¶ 53.)

[21] (*Id.* at ¶ 54.)

[22] (*Id.* at ¶ 55.)

[23] Pennsylvania Rule of Criminal Procedure 150(A)(5)(b) provides:

> (A)    In a court case when a bench warrant is executed, the case is to proceed in accordance with the following procedures.
>> (5)    The bench warrant hearing shall be conducted without unnecessary delay after the individual is lodged in the jail of the county of issuance on that bench warrant.
>>> (a)    When the bench warrant is issued by the supervising judge of a "multi-county" investigating grand jury, the individual shall be detained only until the supervising judge is available to conduct the bench warrant hearing.
>>> (b)    In all other cases, the individual shall not be detained without a bench warrant hearing on that bench warrant longer than 72 hours, or the close of the next business day if the 72 hours expires on a non-business day.

[24] (ECF Doc. No. 1; Ex. G at 11-13.)

32

[25] (*Id.* at Ex. G, at 11.)

[26] (*Id.* at 13.)

[27] (*Id.*)

[28] (*Id.*)

[29] (*Id.*)

[30] (ECF Doc. No. 57, at ¶ 56.)

[31] (ECF Doc. No. 1, at 225; ECF Doc. No. 57, at ¶ 15, 111(p).)

[32] (ECF Doc. No. 57, at ¶ 111(s).)

[33] (ECF Doc. No. 1, at 235.)

[34] (*Id.*)

[35] (ECF Doc. No. 57, at ¶ 60.)

[36] (*Id.* at ¶ 62.)

[37] (*Id.* at ¶ 63.)

[38] (*Id.* at ¶ 66.)

[39] (ECF Doc. No. 1, at 411.)

[40] (ECF Doc. No. 57, at ¶ 68.)

[41] (*Id.* at ¶ 70.)

[42] *Commonwealth v. Tarapchak*, CP-35-CR-550-2014, Order Entered Mar. 10, 2016.

[43] (ECF Doc. No. 2)

[44] (*Id.*)

[45] (*Id.*)

[46] (*Id.*)

[47] (ECF Doc. No. 1)

[48] (*Id.*)

[49] (ECF Doc. No. 3)

[50] (ECF Doc. No. 57)

[51] (*Id.*)

[52] (ECF Doc. No. 59)

[53] (ECF Doc. Nos. 75, 79-81)

[54] (ECF Doc. No. 90)

[55] A motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure for a failure to state a claim upon which relief can be granted examines the sufficiency of the complaint. *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Federal Rule of Civil Procedure 8(a)(2) requires plaintiffs set forth "a short and plain statement of the claim," which gives the defendant " 'fair notice of what the ... claim is and the grounds upon which it rests.' " *Connelly v. Lane Construction Corp.*, —F.3d— , 2016 WL 106159, *3 (3d Cir. Jan. 11, 2016) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)) (alteration in original). The complaint need not contain "detailed factual allegations" but rather "sufficient factual matter to show that the claim is facially plausible, thus enabling the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged." *Warren Gen. Hosp. v. Amgen, Inc.*, 643 F.3d 77, 84 (3d Cir. 2011) (internal quotations omitted). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 556). When considering a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." *Mayer v. Belichick*, 605 F.3d 223, 230 (3d Cir.2010) (alteration in the original) (citing *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir.1993)). We must "accept all the factual allegations as true [and] construe the complaint in the light most favorable to the plaintiff." *Warren Gen. Hosp.*, 643 F.3d at 84 (alteration in original) (citing *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 374 n.7 (3d Cir. 2002). In the end, we will dismiss a complaint if the factual allegations in the complaint are not sufficient " 'to raise a right to relief above the speculative level.' " *West Run Student Hous. Assocs., LLC v. Huntington Nat'l Bank*, 712 F.3d 165, 169 (3d Cir.2013) (quoting *Twombly*, 550 U.S. at 555).

[56] *See Washington v. Warden SCI-Greene*, 608 F. App'x 49, 51-52 (3d Cir. 2015); *Stephanatos v. Cohen*, 236 F. App'x 785, 787 (3d Cir. 2007); *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 702-04 (3d Cir. 1996).

[57]   *See* 5 Charles Alan Wright & Arthur R. Miller, *Federal Practice & Procedure*  § 1281 (3d ed.)

[58] Tarapchak sued United States Magistrate Judge Joseph F. Saporito, Jr.   The United States of America filed a Statement of Interest on behalf of Judge Saporito arguing he is entitled to an immunity defense.   Plaintiffs offered no response and at oral argument consented to his dismissal.  We dismissed Judge Saporito on March 1, 2016.  (ECF Doc. No. 109)

[59] *See Stump v. Sparkman*, 435 U.S. 349, 355-56 (1978); *Gallas v. Supreme Court of Pa.*, 211 F.3d 760, 768-72 (3d Cir. 2000) ("The Supreme Court long has recognized that judges are immune from suit under section 1983 for monetary damages arising from their judicial acts.").

[60] *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

[61] *Gallas*, 211 F.3d at 769 (quoting *Stump*, 435 U.S. at 359)).

[62] *Id.* (citing *Cleavinger v. Saxner*, 474 U.S. 193, 199-200 (1985)).
[63] *Id.*

[64] (ECF Doc. No. 57, at ¶¶ 233-38)

[65] (*Id.* at ¶ 111(j))

[66] (*Id.* at ¶ 111(k))

[67] (*Id.*)

[68] (*Id.* at ¶ 111(n), (p))

[69] (*Id.* at ¶ 111(x))

[70] (*Id.* at ¶ 269)

[71] (*Id.* at ¶ 271)

[72] (*Id.* at ¶ 273)

[73] (*Id.* at ¶¶ 275-77)

[74] *See Harvey v. Loftus*, 505 F. App'x 87, 90 (3d Cir. 2012) (affirming dismissal conspiracy claim on judicial immunity grounds); *Stankowski v. Farley*, 251 F. App'x 743, 746 (3d Cir. 2007); *Panayotides v. Rabenold*, 35 F. Supp. 2d 411, 414-16 (E.D. Pa. 1999) (dismissing claims against judges whose acts were part of conspiracy).

[75] Tarapchak and Pilchesky consented to the dismissal of United States Magistrate Judge Joseph F. Saporito, Jr. on March 1, 2016. (ECF Doc. No. 109).  They refused to apply the similar arguments and consistently dismiss the Judicial Defendants.

[76] The first clause of 1985(2) applies to federal actors and not applicable.

[77] *Farber v. City of Patterson*, 440 F.3d 131, 135 (3d Cir. 2006) (citing *Griffin v. Breckenridge*, 403 U.S. 88, 102 (1971)); *Andela v. Admin. Office of U.S. Courts*, 569 F. App'x 80, 84 (3d Cir. 2014) (citing *Brawer v. Horowitz*, 535 F.2d 830, 839 (3d Cir. 1976) (dismissing conspiracy claim based on deprivation of fair trial rights); *Breslin v, Brainard*, No. 01-7269, 2002 WL 31513425, *9 (E.D. Pa. Nov. 1, 2002) (dismissing § 1985(2) "[b]ecause plaintiff makes no allegation of racial or class based discrimination").

[78] To the extent Tarapchak is alleging Defendants conspired against her due to her political affiliation or activity—which she references throughout the complaint—this is not a protected classification under § 1985. *See Farber*, 440 F.3d at 143 (finding § 1985(3) "does not provide a cause of action for individuals allegedly injured by conspiracies motivated by discriminatory animus directed toward their political affiliation").

[79] *See Farber*, 440 F.3d at 134.

[80] *DeJohn v. Temple Univ.*, No. 06-778, 2006 WL 2623274, *5 (E.D. Pa. Sept. 11, 2006) (citations omitted).

[81] *Spencer v. Steinman*, 968 F. Supp. 1011, 1020 (E.D. Pa. 1997).

[82] *Loftus v. SEPTA*, 843 F. Supp. 981, 987 (E.D. Pa. 1994).

[83] *Humphreys v. PPL Elec. Utils. Corp.*, No. 12-4334, 2014 WL 5503201, *2 (E.D. Pa. Oct. 31, 2014) (quoting *Startzell v. City of Phila.*, 533 F.3d 183, 205 (3d Cir. 2008) (citation omitted)).

[84] (ECF Doc. No. 57, at ¶ 90)

[85] (*Id.* at ¶ 275.)

[86] *Catala v. Martine*, No. 15-772, 2015 WL 7776631, *4 (M.D. Pa. Dec. 3, 2015) (citing *Spencer*, 968 F. Supp. at 1020)).

[87] *DeJohn*, 2006 WL 2623274, at *4; *see also Rosembert v. Borough of East Lansdowne*, 14 F. Supp. 3d 631, 647-48 (E.D. Pa. 2014) ("A lack of agreement is fatal to the conspiracy claims under section 1983 and section 1985[.]).

[88] *See Clark v. Clabaugh*, 20 F.3d 1290, 1295 (3d Cir. 1994).

[89] While we dismiss the conspiracy claims because they fail to state a claim, we also note the claims against Attorney General Kane cannot be predicated on a theory of respondeat superior. *Holmes v. City of Phila.*, No. 05-2909, 2005 WL 1875524, *2 (E.D. Pa. Aug. 4, 2005) (citing *DiMaggio v. O'Brien*, 497 F. Supp. 870, 876 (E.D. Pa. 1980) (finding liability under § 1985

cannot be imposed on *respondeat superior* theory)). Tarapchak provides no factual basis other than Attorney General Kane is Deputy Attorney General LeBar's superior. Such a claim cannot stand without any factual allegations showing Attorney General Kane's personal involvement, direction to violate Tarapchak's constitutional rights, or acquiescence in such conduct.

[90] *See Preiser v. Rodriguez*, 411 U.S. 475, 477 (1973) ("If . . . habeas corpus is the exclusive federal remedy . . . a plaintiff cannot seek the intervention of a federal court until he has first sought and been denied relief in the state courts . . . .").

[91] *Id.* at 476-77.

[92] *Id.*

[93] *Id.* at 477.

[94] *Id.* at 484.

[95] *Id.* at 490.

[96] *Id.* at 500.

[97] *See Tarapchak v. McMillan*, No. 15-1499, 2015 WL 5099281, *1 (M.D. Pa. Aug. 31, 2015) ("[T]his section specifically provides that the person must be in custody pursuant to the judgment of a State court.")

[98] *Berete v. Patton*, No. 11-6594, 2012 WL 1277344, *2 (E.D. Pa. Mar. 20, 2012) (citation omitted).

[99] *United States v. Roberts*, 463 F. App'x 72, 74 n.4 (3d Cir. 2012).

[100] *Greco v. Senchak*, 25 F. Supp. 3d 512, 517 (M.D. Pa. 2014).

[101] *Elmore v. Cleary*, 399 F.3d 279, 281 (3d Cir. 2005).

[102] (ECF Doc. Nos. 65-66, 73, 78 & 88)

[103] 512 U.S. at 480.

[104] *Id.* at 479.

[105] *Id.*

[106] *Id.* at 486-87.

[107] *Id.* at 487.

[108] *Id.*

[109] (ECF Doc. No. 57, at 26, 41-42, 46, 58, 66, 72, 83, 91; ¶¶ 150, 218, 265, 307, 370, 467, 577, 647, 652, 695, & 702.)

[110] (N.T. Hearing, March 1, 2016, p.37)

[111] *Edwards v. Balisok*, 520 U.S. 641, 647 (1997) (citations omitted).

[112] *See Stocker v. Hood*, 927 F. Supp. 871, 873 (E.D. Pa. 1996) (dismissing conspiracy to convict claim as barred under *Heck*).

[113] *Thomas v. Jones*, 428 F. App'x 122, 123-24 (3d Cir. 2011) (citing *Strickland v. Washington*, 466 U.S. 668, 694 (1984) ("A meritorious ineffective-assistance-of-counsel claim requires the movant to show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'")).

[114] *Gray v. Rustin*, 445 F. App'x 570, 573 (3d Cir. 2011) (finding allegations of extended pretrial detention hindering trial defense barred by *Heck*).

[115] *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 291 (2005); *Great W. Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 166 (3d Cir. 2010).

[116] *Exxon Mobil*, 544 U.S. at 284.

[117] *Id.* at 292.

[118] *Great Western*, 615 F.3d at 166 (citing *Exxon Mobil*, 544 U.S. at 284).

[119] *Id.*

[120] *Id.* at 161.

[121] *Id.* at 166.

[122] *Id.* at 167.

[123] *Id.*

[124] *Id.*

[125] *Id.*

[126] (*See e.g.*, ECF Doc. No. 74, at 15; ECF Doc. No. 93, at 7)

[127] *Great Western*, 615 F.3d at 172 (quoting *Nesses v. Shepard*, 68 F.3d 1003, 1005 (7th Cir. 1995)). "[S]hould the *Rooker-Feldman* doctrine not apply such that the district court has jurisdiction, disposition of the federal action, one the state court-adjudication is complete, would be governed by preclusion law." *Great Western*, 615 F.3d at 170. Collateral estoppel principles are applicable to civil rights actions and encompass state-court judgments or proceedings, whether civil or criminal. *See Allen v. McCurry*, 449 U.S. 90, 104 (1980) (finding suppression ruling in criminal case could serve as basis for collateral estoppel in subsequent civil rights action); *Wolff*, 418 U.S. at 554 n.12 (anticipating res judicata principles would apply where prisoner seeks habeas relief in state court and a civil rights action in federal court). No party has argued whether Judge Barrasse's ruling on the civil *habeas* petition in Tarapchak's August 6, 2015 hearing precludes re-litigation in the present matter and because preclusion is not waived by failure to include it in a Rule 12 motion, we need not decide the issue.

[128] *Public Utils. Comm'n v. Pollak*, 343 U.S. 451, 461 (1952).

[129] U.S. Const. amend. XIV, § 1.

[130] *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).

[131] *Andrews v. City of Phila.*, 895 F.2d 1469, 1478 (3d Cir. 1990) (citation omitted).

[132] *Id.*

[133] *Collura v. Ford*, No. 13-4066, 2016 WL 409228, * 18 n.17 (E.D. Pa. Feb. 3, 2016) (internal quotation omitted).

[134] *See Hill v. Borough of Kutztown*, 455 F.3d 225, 239 (3d Cir. 2006) (citing *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)).

[135] (ECF Doc. No. 57, at ¶ 620.)

[136] *Hubbard v. Taylor*, 399 F.3d 150, 163-68 (3d Cir. 2005) (finding pretrial detainees "are not yet at a stage of the criminal process where they can be punished").

[137] *Id.* at 158.

[138] *Id.* at 159 (citing *Bell v. Wolfish*, 441 U.S. 520, 538-39 (1979)).

[139] *Stevenson v. Carroll*, 495 F.3d 62, 68 (3d Cir. 2007).

[140] *Id.* (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)).

[141] *Hubbard*, 399 F.3d at 160.

[142] (ECF Doc. No. 57, at ¶ 632(a)-(jj))

[143] (*Id.*)

[144] (ECF Doc. No. 92)

[145] *See Baraka v. McGreevey*, 481 F.3d 187, 210 (3d Cir. 2007) ("A defendant in a civil rights action must have personal involvement in the alleged wrongs to be liable [.]") (internal quotation omitted).

[146] *See Rode v. Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1988).

[147] *Id.*

[148] *See Buoniconti v. City of Phila.*, —F. Supp. 3d —, 2015 WL 8007438, *6-12 (E.D. Pa. Dec. 7, 2015) (dismissing claims against prison warden with no personal involvement); *Vangoethem v. Lawton*, No. 13-6696, 2014 WL 3869904, *2 (E.D. Pa. Aug. 6, 2014) (dismissing due process claims against warden for failure to plead personal involvement).

[149] *Rode*, 845 F.2d at 1207.

[150] *Mulholland v. Gov't Cnty. of Berks*, 706 F.3d 227, 237 (3d Cir. 2013) (citation omitted).

[151] *Id.*

[152] *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 695 (1978).

[153] *Id.* at 692-94.

[154] *Andrews v. City of Phila.*, 895 F.2d 1469, 1480 (3d. Cir. 1990) (quoting *Pembaur v. City of Cincinnati*, 475 U.S. 469, 481 (1986)).

[155] *Buoniconti*, 2015 WL 8007438, at *7 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citation omitted)).

[156] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[157] (ECF Doc. No. 57, at 2; ¶ 425.)

[158] (*Id.* at ¶ 425.)

[159] U.S. Const. amend. VI.

[160] *Kirby v. Illinois*, 406 U.S. 682, 688 (1971).

[161] *Id.* at 688-89.

40

[162] *Texas v. Cobb*, 532 U.S. 162, 168 (2001); *McNeil v. Wisconsin*, 501 U.S. 171, 175 (1991).

[163] U.S. Const. amend. V.

[164] *Miranda*, 384 U.S. at 444.

[165] *Renda v. King*, 347 F.3d 550, 557 (3d Cir. 2003).

[166] *Id.* (citing *Giuffre v. Bissell*, 31 F.3d 1241, 1256 (3d Cir. 1994)).

[167] *Id.* at 559.

[168] *Renda*, 347 F.3d at 559.

[169] U.S. Const. amend. XIV, § 1.

[170] *Alvin v. Suzuki*, 227 F.3d 107, 116 (3d Cir. 2000).

[171] *Wall v. Dauphin Cnty.*, No. 04-238, 2006 WL 27123, *4 (M.D. Pa. Jan. 5, 2006).

[172] (ECF Doc. No. 97, at 10-12.)

[173] 878 F.2d 772, 776 (3d Cir. 1989).

[174] 240 F. App'x 477, 480 (3d Cir. 2007).

[175] *Id.*

[176] *Thompson v. Burke*, 556 F.2d 231, 236-237 (3d Cir. 1977).

[177] *Jones v. Johnson*, 402 F. Supp. 992, 999 (E.D. Pa. 1975) (citing *Scheuer v. Rhodes*, 416 U.S. 232, 241 (1974)).

[178] *Harper*, 808 F.2d at 284.

[179] We note there may be valid defenses to the delay in Tarapchak's hearing including delay caused by her recusing Judge Geroulo and requesting new counsel. However, no Defendant raised such an argument and it would most likely not be a proper one for us to consider at this stage. Of course, we will consider them on a more fully developed record at summary judgment.

[180] (ECF Doc. No. 74, at 17-19.)

[181] *Higgs v. Attorney Gen. of the United States*, 65 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established.").

[182] "In the absence of an unconstitutional policy, a municipality's failure to train its employees and officers can create an actionable violation of a party's constitutional rights under § 1983." *Reitz v. County of Bucks*, 125 F.3d 139, 145 (3d Cir. 1997)(*citing City of Canton v. Harris*, 489 U.S. 378, 388 (1989).

[183] *Monell*, 436 U.S. at 692-94.

[184] *Buonoconti*, 2015 WL 8007438, at *7 (quoting *Bielevicz v. Dubinon*, 915 F.2d 845, 850 (3d Cir. 1990) (citation omitted)).

[185] 61 Pa. Cons. Stat. § 1731(a)(3); *Fleckenstein v. Crawford*, No. 14-1085, 2015 WL 5829758, *27 (M.D. Pa. Oct. 1, 2015) (finding prison board proper party rather than county).

[186] *McTernan v. City of York*, 564 F.3d 636, 658-59 (3d Cir. 2009).

[187] *Canton*, 489 U.S. at 388.

[188] *Connick v. Thompson*, 563 U.S. 51, 61 (2011).

[189] *Bryan Cnty.*, 520 U.S. at 410.

[190] *Connick*, 563 U.S. at 62 (quoting *Bd. of Comm'rs of Bryan Cnty v. Brown.*, 520 U.S. 397, 409 (1997)).

[191] *Canton*, 489 U.S. at 390, n. 10.

[192] *Bryan Cnty.*, 520 U.S. at 409-10 (citing *Canton*, 489 U.S. at 390)).

[193] *Canton*, 489 U.S. at 391.

[194] 219 F.3d 261, 276-77 (3d Cir. 2000).

[195] *Id.*

[196] *Id.* at 277.

[197] *Reynolds v. Municipality of Norristown*, No. 15-0016, 2015 WL 4450979, *6 n.5 (E.D. Pa. July 17, 2015) (quoting *Olender v. Twp. of Bensalem*, 32 F. Supp. 2d 775, 791 (E.D. Pa. 1999)); "Pennsylvania state law false arrest claims and federal constitutional false arrest claims are co-extensive both as to elements of proof and elements of damages." *Russoli v.Salisbury Twp.*, 126 F. Supp. 2d 821, 869 (E.D. Pa. 2000) (citing *Patzig v. O'Neil*, 577 F.2d 841, 851 (3d Cir. 1978). Accordingly, we examine them together.

[198] U.S. Const. amend. IV.

[199] *Orsatti v. New Jersey State Police*, 71 F.3d 480, 482 (3d Cir. 1995); *Russoli*, 126 F. Supp. 2d at 869.

[200] *Paff v. Kaltenbach*, 204 F.3d 425, 436 (3d Cir. 2005).

[201] (ECF Doc. No. 57, at ¶ 533.)

[202] (*Id.* at ¶ 22.)

[203] (*Id.* at ¶ 23.)

[204] *Hamilton v. Leavy*, 322 F.3d 776, 782-83 (3d Cir. 2003).

[205] *Id.*; *Lepre v. Tolerico*, 156 F. App'x 522, 525 (3d Cir. 2005) (finding employees of domestic relations section of Lackawanna Family court immune for execution of facially valid bench warrant).

[206] While we dismiss Warden McMillan on other grounds, this line of reasoning may also apply to grant him the protection of immunity. *See McGeachy v. Doe*, 444 F. App'x 510, 512 (3d Cir. 2011).